### HULL et al. v. BARTH et al.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

1. PARTNERSHIP—EVIDENCE—CONDUCT OF PARTIES.

Under a subsequent agreement between a lessor and lessee of hotel property, the former contributed all the capital necessary to conduct the hotel. The business was managed by the lessee, but the lessor resided at the hotel, received all the money, and drew all checks for bills. He knew that hotel supplies were purchased on credit. The bookkeeper's work was always open to the inspection of the lessor, and the books were delivered to, and retained by, the lessor. The profits were to be divided in the proportion of one to three. *Held* to render lessor liable as a partner to one furnishing supplies, though the original agreement provided that lessee should conduct the business in his own name, and not contract any indebtedness for which lessor might be held liable.

**2. EVIDENCE—SEPARATE ORAL AGREEMENT.**
    The legal effect of a written agreement of partnership cannot be modified by a prior verbal agreement between the parties that the relation should be that of debtor and creditor.

Appeal from trial term, New York county.

Action by Joseph T. Hull, Walter S. Rafferty, and Edward B. Hosier, composing the firm of Rafferty & Co., against John C. Barth, impleaded with John Spitler. Judgment for plaintiffs, and defendants appeal. Affirmed.

For former report, see 55 N. Y. Supp. 1103.

Argued before GOODRICH, P. J., and HATCH, WOODWARD, and HIRSCHBERG, JJ.

W. J. Lippmann, for appellants.
A. B. Cruikshank, for respondents.

HIRSCHBERG, J. The action is brought to recover a balance due for goods sold and delivered for use at the Ocean Hotel, at Long Branch, N. J. The defendant John C. Barth is the owner of the hotel, and he leased it to his co-defendant, John Spitler, by an instrument dated February 24, 1897, for the summer season of that year. In this lease Spitler agreed to open the hotel not later than June 27th, and to keep it open at least until September 1st, but not later than October 15th. The rent was to be 15 per cent. of the gross receipts, and Spitler agreed to conduct the business in his own name, and not to contract any indebtedness for which Barth might in any way be held liable, and not to use Barth's name in any way in the business, without his written authority. On the 2d of March, 1897, the parties executed an additional agreement, of which the following is a copy:

"Agreement.

"This agreement, made this 2d day of March, 1897, by and between John C. Barth, party of the first part, and John Spitler, party of the second part, is as follows: For and in consideration of the mutual covenants contained herein, we agree as follows: John C. Barth agrees to supply all the capital required to open and maintain the Ocean Hotel, at Long Branch, summer season of 1897, in consideration of which said party of first part is to receive one-fourth of the net profits arising from said hotel business, after all the terms of a certain lease granted by J. C. Barth to John Spitler have been complied with; all moneys and receipts to be in the custody of said party of first part, who shall keep proper and true account of same, and sign all checks. No division of profits shall be made until it is shown by the books that a profit has been earned. Party of second part shall give his entire· time to managing said hotel business from April 1, 1897, till Sept. 1, 1897, and in the division of profits shall receive three-fourths of the net profit after the terms of lease before mentioned shall have been complied with. Party of second part shall be entitled to draw money from time to time to meet his necessary expenses, not to exceed twenty-five dollars per week, however. All amounts so drawn to be charged to his account, and deducted from amount due him at final settlement. This contract shall be binding alike on the party of first and second part, and shall expire with the close of the summer season of 1897.

"[Sd.]                        John C. Barth.
                              "John Spitler."

"Witness: Bertha Barth."

The case has been twice tried. The first trial resulted in a dismissal of the complaint, apparently upon the ground that this agreement did not constitute the defendants partners in the absence of a provision for contribution in respect of losses. On appeal, how-

ever, the appellate division in the First department held that this agreement made the defendants co-partners in the management of the business, and that the landlord, Barth, was accordingly liable for the value of goods furnished for use during the season. Hull v. Barth, 37 App. Div. 359, 55 N. Y. Supp. 1103. In the opinion of the court (page 361, 37 App. Div., and page 1103, 55 N. Y. Supp.), the distinction is pointed out between the contribution of capital in a business to be requited by a share in the profits as such, and payment for the use of capital as a loan by a share in the profits as a measure of compensation merely.

On the second trial, the material facts were undisputed. The execution of the agreement was established, as was also the fact that the defendant Barth contributed all the capital. The business was conducted under the management of the defendant Spitler, but the defendant Barth resided in the hotel, received the money, which he kept deposited in his own name, and drew all checks for the payment of bills incurred. He knew that the hotel supplies were purchased on credit. A bookkeeper was employed, whose work was always open to Barth's inspection, and the books were delivered to, and retained by, Barth. Every element was therefore present which is essential to the creation of a partnership. One contributed all the capital and the other all his time. No losses were contemplated. The profits were to be divided in the proportion of one and three, and the custody of the money and the receipts by Barth, as well as the keeping of the books and accounts and the signing of the checks, was in strict conformity with the requirements of the agreement.

The defendant Barth, however, endeavored to avoid the legal effect of the written agreement by evidence of a verbal understanding between himself and Spitler at the time he agreed to furnish the capital, and before the execution of the written contract. He testified, in effect, that he agreed to loan to Spitler the capital needed to enable the latter to conduct the business, and that he was to receive for the loan 25 per cent. of the net profits. Manifestly, this characterization of the arrangement could have no greater effect, as between the defendants and third persons, than could a distinct verbal agreement that they should not be partners, followed by the execution of a written contract, which clearly established that relation. The talk is not only merged in the subsequent writing, but the fact that the parties, by the writing, hold themselves out to the world as partners, will bind them to the liability of partners in favor of creditors dealing with them, as the plaintiffs did, on the faith of that relation. On his own evidence, it is clear that Barth possessed a proprietary interest in the business and in its profits as such, and that he was accordingly liable to the creditors of the firm. Mason v. Partridge, 4 Hun, 621; Magovern v. Robertson, 116 N. Y. 61, 22 N. E. 398, 5 L. R. A. 589. There is nothing in the rulings on the trial which affects the result. There was no question of fact to be submitted to the jury.

The judgment should be affirmed, with costs. All concur, except BARTLETT, J., absent.